## STEVENS' EXECUTRIX and others *vs.* STEVENS' EXECUTORS and others.

1. In an amicable suit between executors, and legatees and devisees (to which, also, the state is a party, by reason of an interest under the will), brought to obtain the advice or direction of the court, involving, it may

be, the very existence of important and valuable interests, it is the duty
of the court to see to it that the rights of legatees and devisees are pro-
tected, and to that end, to mould the proceedings, if necessary, so as to
effect justice between all parties.

2. In such case, the court will give such direction to the proceedings as,
if possible, to make a complete and final disposition of the subject, and
put an end to controversy as far as practicable, and will, if necessary to
that end, order special proceedings to be taken : e. g., an information to be
filed to protect the rights of the state.

3. The proper time for filing a cross-bill, where such bill is necessary,
is at the time of putting in the answer to the original suit, and before the
issue is joined by the filing of the replication. But such rule is not
enforced where the Attorney-General is a party in respect of the interests
of the state.

4. Where the sole object of the action is to settle the rights of legatees
and devisees, the rule requiring a cross-bill to be filed at the same time
with the answer, will not be applied with the same strictness as in cases
involving the violation or withholding of rights.

5. Where the evidence is not closed in the original suit, and the Attor-
ney-General has filed an information to protect the rights of the state, the
original suit will be stayed, but only so far as it involves such rights.   As
to the other matters in controversy, the original suit will go on.

Edwin A. Stevens, then a citizen of this state, died on or
about August 7th, 1868, leaving a will and codicil thereto,
the former dated August 5th, 1865, and the latter April 15th,
1867.   By the will, he disposed of all his property for the
benefit of his wife and children.   By the codicil, among other
things, he directed that his property known as Castle Point,
and his homestead lot, and the houses thereon, be divided
into four plots, one to each of his sons; that his executors
purchase two certain school-house lots, and the school-houses
thereon, and cause them to be conveyed to themselves, on the
trusts declared in that behalf in the codicil, and devised to
his executors, on the trusts declared in the codicil, certain
other land in Hoboken, for establishing and maintaining
thereon an institution of learning, now known as " The
Stevens Institute of Technology;" and further provided as
follows :   " Out of the residue of my estate (excluding Castle
Point, and the homestead lot, and the house thereon) re-

maining after the payment of my debts, the said $800,000 in legacies, and the appropriation of so much thereof as is necessary to answer the foregoing charitable bequests and devises, I empower my executors to apply, not exceeding the sum of $1,000,000, to finish, on my general plans, as near as may be, in the discretion of my said executors, the battery known as the Stevens Battery, and for the accomplishment of the said object, I give to them the use of the dock and yards and basin heretofore appropriated to the said battery, and all the material provided for said battery. When said battery shall be finished, I direct my executors to offer the same to the State of New Jersey, as a present, to be disposed of as said state may deem proper; and if not accepted by the said state, I direct my executors to sell the same, and the proceeds thereof shall fall into the residue of my estate."

By the will, the testator appointed his wife, Martha B. Stevens, and Messrs. Samuel B. Dod and William W. Shippen, his executors.

December 23d, 1868, Mrs. Stevens, with her children, filed a bill in this court against her co-executors, making the Attorney-General, as the representative of the state, and Mary P. Garnett, one of the residuary legatees and heirs-at-law of the testator, parties defendant.

The bill raises the questions, whether the charitable bequests are any of them indefinite, and as to the bequests to the state, whether the direction to expend a sum not exceeding $1,000,000, to finish the battery, is not indefinite and void, and whether the direction to offer the battery to the state is not also illegal and void, inasmuch as it is alleged that the battery will be a vessel of war, and the state has no right, in time of peace, to keep such a vessel, except with consent of the Congress of the United States. The prayer is, that the will and codicil may be established, and that the directions and trusts thereof may be performed, and the devises and bequests be carried into execution, so far as the same are legal, and no farther; and that this court may give a construction to the said devises, bequests, directions,

and trusts, and declare which, if any, of the same are illegal; and that, in the meantime, Messrs. Dod and Shippen may, as executors, be restrained from executing any of the directions of the will which require the payment of money, or the sale of any property of any kind of the testator, or the purchase of any real estate for the purpose of carrying out said charitable uses and trusts, and may be restrained from acting in the execution of those trusts. The bill contains, also, a prayer for general relief. It prays answer without oath.

To this bill the defendants answered; the executors denying the allegations that the trusts for charitable uses, or the directions, devises, or bequests, or any of them, were illegal; Mrs. Garnett insisting that all the devises, bequests, and trusts, except those to and for the benefit of the widow and children of the testator, were illegal; and the Attorney-General insisting on the legality and validity of the bequest to the state, and the direction in connection therewith.

Replication was filed April 21st, 1869. Congress, by resolution, approved July 1st, 1870, consented that the state receive and dispose of the battery.

September 11th, 1871, Mrs. Stevens and her children filed a supplemental bill, stating that since the filing of the original bill, one of the complainants in that bill had died, and that another of the complainants was born after the making of the codicil. It recited the original bill, and the proceedings in the suit subsequent thereto, and set up the impossibility of finishing the battery for the sum in that behalf provided by the will. It prayed answer without oath, and asked advice on the points submitted by the original bill, and on the following additional ones:

Whether the birth of issue after will made, although provided for by the will, was a revocation of the will.

How Castle Point and the homestead lot should be divided.

Whether the executors had duly executed the trust as to the Stevens Institute.

What the executors should do with the two school-houses, and how to execute the trust as to them.

It prayed that the battery might be sold, with the assent of the state, without prejudice to the rights of the complainants, or Mrs. Lewis (formerly Mrs. Garnett).

That the net proceeds of the sale of the battery might fall into the residue, and be paid, in any event, to the executors, and not to the state.

That the Governor and the executors, other than Mrs. Stevens, might be enjoined from paying over to the state the money received from the sale of the battery. And for other and further relief.

The Governor and commissioners of the state, appointed in relation to the battery, and the executors, Mrs. Lewis and the Attorney-General, were the defendants to this bill.

January 5th, 1872, the executors, Messrs. Dod and Shippen, filed their answer to the supplemental bill, setting forth, among other things, the history of the battery, and of their action under the will in relation to it, and admitting the impracticability of completing it for the sum provided by the codicil for that purpose.

The Attorney-General also answered, admitting the exhibition of the original bill, and the filing of the answer thereto, and the passage and approval of the resolution of Congress of July 1st, 1870, consenting that the state should receive and dispose of the battery according to the conditions of the bequest, and praying that all other matters in the supplemental bill might be proved, and insisting that nothing therein alleged could deprive the state of the battery and of the value thereof.

April 12th, 1872, the supplemental bill was amended, by consent, by making the heirs-at-law of Robert L. Stevens, deceased, parties thereto in respect of a claim which it was apprehended might be set up in their behalf to an interest in the battery, under the language of a resolution of Congress, approved by the President, July 17th, 1862, by which all the right, title, and interest of the United States to the

battery, was released to "the heirs-at-law of Robert L. Stevens, or their representatives." This amendment is understood to have been made in order to obviate any objection to the title of the vessel, which there was then some expectation of selling.

The heirs-at-law of Robert L. Stevens, deceased, are, it is alleged, properly before the court, under the supplemental bill.

The cause being at issue, testimony was taken on part of the complainants, which, as they insist, was closed March 1st, 1873, though the Attorney-General denies that it was so understood by him or the examiner. Two witnesses, Messrs. Dod and Shippen, were examined.

July 21st, 1873, the Attorney-General filed a cross-information, praying discovery, among other things, of the general plans of the testator for the construction of the battery, the action and expenditures of the executors in reference to finishing the vessel on those plans, and insisting that, in this suit, and on the allegations therein contained, none of the rights of the parties litigant can be settled; that for want of information on the subject, on the part of the Attorney-General, the state is not prepared to litigate the question as to the impracticability of finishing the battery according to the directions of the will, for the sum provided for the purpose by the will; that the state claims that the gift is absolute, and not dependent on any condition, and, therefore, such litigation, which would be very expensive, involving the testimony of experts in naval construction, who would need time for their investigations, is entirely unnecessary; and the information seeks to have the question, as to whether the gift is absolute or not, first settled by the court. The Attorney-General insists that, in the suit as it stood on the original and supplemental bills, and the matters therein contained, this court neither has the jurisdiction, nor will exercise the power to settle any of the questions raised by the information. What they are, is sufficiently shown by the prayer, which is—

That the executors may be required to offer the vessel to

the state in such condition, and in such a stage of completion as this court shall, under the circumstances, think equitable and just. To finish it out of the moneys appropriated for the purpose by the testator, in and by the will, or any other moneys of his estate. If these moneys will not finish it, that the executors may be required to finish it out of their own money.

That the court will declare that the bequest of the battery was not upon any contingency, whatever; and expressly, not upon the contingency that the vessel should be actually finished (with a less sum of money than it could possibly be finished for) before the executors should offer it to the state; that is to say, that the court will declare that the bequest was not on an impossible condition.

That the words, "when said battery shall be finished, I direct my executors to offer the same," are not words importing a condition precedent to any right of the state.

That those words are merely descriptive of the subject of the bequest, and of the state and condition in which the state should have the right to require the vessel to be put by the executors, by means of the fund of $1,000,000, before the state should be obliged to take any risk or burden connected with the preservation or finishing thereof.

That the resolution of Congress, of 1862, was a gift of the battery to the testator, and if not, that the gift by the United States to the "heirs of Robert L. Stevens, or their legal representatives," by that resolution, is void for uncertainty, and in that case, that the resolution of 1870 is a gift of the battery to the state.

That the heirs-at-law of Robert L. Stevens—that is to say, the persons who are meant when the word "heirs" is used in a technical sense, be declared never to have had any right to the battery, and if they had, that they are barred, by reason of the facts set forth in the information, from all claim to the battery, and all right and interest therein.

That the suit brought by Martha B. Stevens and her children may be declared to be of such a nature as to prev en

the court from settling the rights of any of the parties. That it may be stayed until the hearing in the cross-suit, or at least till all the parties to the information shall have answered it, or the rights of the state are declared on a hearing of the information, on demurrer, or otherwise.

And that the Attorney-General, on behalf of the state, may have such other and further relief as the nature of the case may require, and especially that all of the defendants may answer the information under oath, making discovery of all the matters thereinbefore prayed to be discovered, and all such other matters as are pertinent to the facts alleged in the information.

To the information, all persons who are or may be supposed to be in interest, are made parties.

On the filing of the information, an injunction was issued pursuant to the prayer.

Motion is now made by the complainants in the original suit, and the executors defendants therein, to dissolve the injunction.

*Mr. Abbett, Mr. I. W. Scudder*, and *Mr. Vanatta*, for the motion.

*Mr. Gilchrist*, Attorney-General, contra.

THE CHANCELLOR.

This is a suit by an executrix and her children (she and they being beneficially interested, under the residuary clause of the will), against her co-executors, and another residuary legatee, and the Attorney-General, as the representative of the state, in respect to one of the bequests, in reference to which the bill seeks the judgment of the court.

The bills—original and supplemental—are filed for advice, for a construction of the will, and for the approval of the court in regard to the action already taken by the executors in reference to trusts under the will, and its actual or supposed authority or directions in relation thereto.

Suits of this character, although capable of being so con-

ducted and controlled as to do justice to all persons in interest, may not be the most desirable method of trying the rights of the parties, and may be open to very grave objection as repects the claims of legatees or devisees, adverse to the executors or trustees.

This is evidently an amicable suit, so far as the complainants and the executors, and those who claim under the will, adversely to the state, are concerned. In actions thus instituted, voluntary applications to the court for its advice or direction, involving, it may be, the very existence of important and valuable interests, it is the duty of the court to see to it that the rights of legatees and devisees are protected, and to that end, to mould the proceedings, if necessary, so as to effectuate its purpose of doing justice to all parties. It is also incumbent upon it to give such direction to the proceedings as, if possible, to make a complete and final disposition of the subject; and put an end to controversy, as far as practicable. That could not have been done in this case without the information. As the proceedings stood before it was filed, no relief could have been given to the state, against the executors.

It appears to me to be clear that, to say the least of it, the proceedings, without the information, were neither apt nor complete for the determination of the questions involved in the controversy, as regards the battery, and it would have been the duty of the court to exercise its formative power to effect a final and effectual adjudication on the subject. To that end, if the information had not been filed, it might, and probably would, as a proper, if not necessary preliminary to a decree, have directed, when the cause should have come before it for judgment, that such an information be filed in behalf of the state. The information, therefore, is not to be regarded as obstructive or dilatory.

The application now before me is for a discharge of the stay.

It is insisted by the counsel of the complainants in the original suit, that the progress of that part of the litigation

should not be impeded by the filing of the information. They urge that the practice of the court is wholly against granting or continuing the stay.

It is true, the proper time for filing a cross-bill, where such bill is necessary, is at the time of putting in the answer to original suit, and before the issue is joined by the filing of the the replication.    But the reason is, that there is ordinarily no excuse for delaying it beyond that period, because the matters of defence, upon which a cross-bill is founded, must be stated in the answer to the original suit, as well as in the cross-bill, and it can, therefore, seldom be necessary to delay the filing of the cross-bill till after the original cause is at issue.    2 *Daniell's Ch. Pr.* 1650 ; *Irving* v. *De Kay,* 10 *Paige* 319.

But the reason of the rule fails in such cases as this, where the Attorney-General is made a defendant, as the representative of the state.    He may be profoundly ignorant of the facts which constitute a defence to the state, or its protection against the adjudication which is sought against or affecting its interest.    Therefore, his answer may be, and usually is a mere form—a general answer, professing ignorance in reference to the matters contained in the bill, and expressing a hope that the interests of the state may be taken care of.    1 *Daniell's Ch. Pr.* 130.    Such an answer is put in without oath, and is not liable to be excepted to, even though it be a cross-bill filed by the defendant in an information, for the purpose of obtaining a discovery of matters alleged to be material to his defence to the information.    *Ibid. ; Deare* v. *Att'y-Gen.,* 1 *Y. & C. Exch. R.* 209.

It is evident that the reason for requiring that a cross-bill be filed between the filing of the answers to the original suit and the replication thereto, will ordinarily fail where the Attorney-General is a party in respect of the interests of the state.    I think it fails here.

But, the rule itself, as applied to ordinary cases of suits between private persons, will be relaxed, on good cause shown for the delay in filing the cross-bill, and in such case, if the testimony has not been closed, the court may grant the stay.

*White* v. *Buloid*, 2 *Paige* 166. Besides, in such proceedings as these, the legatee or devisee ought not to be treated with the same strictness, as defendants in cases involving the violation or withholding of rights. There ought, of course, to be no unnecessary delay in the progress of the suit, but at the same time, there should be no undue haste. The sole object of the action is to settle the rights of the parties. The practice, as stated in White *v.* Buloid, is approved in *Williams* v. *Carle*, 2 *Stockt.* 543.

The evidence in the case before me is not closed, though it is insisted by the complainants in the original suit, that they have closed their principal case. But two witnesses, and they the executors, have been examined.

There seems to me no valid objection, arising from the practice of the court, to continuing the stay. This suit, so far as the rights or interests of the state are concerned, is a suit for construction and advice. If the complainants, as legatees, seek relief in that connection, it is by indirection. They directly ask an adjudication as to the provision of the will in regard to the battery, and claim the advantage which will result from a decision adverse to the claim of the state. It is a case peculiarly fit for the exercise of the formative power of the court—one in which the court, appealed to for its advice and direction, will take care to protect legatees who are brought before it, not as wrong doers, but on account of their apparent claim to the testator's bounty, against the expense and other incidents of fruitless or unnecessary litigation.

The information presents the question, whether the provision of the will in reference to the battery, is not, in effect, an absolute gift of the vessel to the state, and invites an issue, and asks a decision on that point. An adjudication favorable to the claim of the state, on that question, would, of course, render it unnecessary to consider whether the alleged condition, that the battery be finished for a sum not to exceed $1,000,000, be an impossibility or not.

If the Attorney-General is right on this point, and the

provision is to be construed as an absolute gift to the state, why should the state be put to the expense and trouble of a litigation on the subject of a condition which does not exist? In cases of charities, it has been the practice of the court to determine the real question between the parties, in the readiest, most expeditious, and least expensive manner. In *Attorney-General* v. *Pearson,* 3 *Meriv.* 395, a question being made as to what the character of the injunction should be, whether common or special, there being a suit at law pending, Lord Eldon said: "I do not think that we should have occasion to disturb ourselves with any question on the practice of the court, as to this being the case of a common or special injunction, and so forth; because, taking it to be a trust, in the nature of a charity, for religious purposes, I conceive that the court is in the constant habit, in such cases, of saying that, provided it sees any way of deciding the points at issue, it will not allow the parties to go to trial, but will itself find the means of putting the matter into a course which will save all the expense of such proceeding. And, if it should turn out to be clear, upon the bill and answer, that a certain portion of the legal trust estate is vested in the plaintiff, and a certain other portion in the defendants, I take it to be quite within the compass of the court's jurisdiction to say, I will put the parties exactly in the same condition, as to the point at issue, as if there had been a trial, judgment, and execution at law." See, also, *Rochester* v. *Attorney-General,* 2 *Bro. P. C.* 287.

It is incumbent on the court, in cases such as the present, to adopt the like reasonable course.

In justice to the parties, the question just referred to, whether the provision is to be construed as an absolute gift or not, should be passed upon by the court, before the cause proceeds further, and I conceive it to be my duty to stay the original suit to that end. The stay will, of course, be modified so as to be confined to so much of the suit as relates to the provision of the will in respect to the battery.

The motion to dissolve is denied.